## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## AT BECKLEY

| | |
|---|---|
| MACOMB COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br> v.<br><br>MASSEY ENERGY COMPANY, DON L. BLANKENSHIP, BAXTER F. PHILLIPS, JR., ERIC B. TOLBERT, RICHARD M. GABRYS, LADY BARBARA THOMAS JUDGE, DAN R. MOORE, JAMES B. CRAWFORD, ROBERT H. FOGLESONG and STANLEY C. SUBOLESKI,<br><br>     Defendants. | No. 5:10-cv-00689<br><br>Hon. Irene C. Berger |
| FIREFIGHTERS' RETIREMENT SYSTEM OF LOUISIANA, Individually and On Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br> v.<br><br>MASSEY ENERGY COMPANY, DON L. BLANKENSHIP; BAXTER F. PHILLIPS, JR.; ERIC B. TOLBERT, DAN R. MOORE; E. GORDON GEE; RICHARD M. GABRYS; JAMES B. CRAWFORD; ROBERT H. FOGLESONG; STANLEY C. SUBOLESKI; LADY BARBARA THOMAS JUDGE; and J. CHRISTOPHER ADKINS;<br><br>     Defendants. | No. 5:10-cv-00776<br><br>Hon. Irene C. Berger |

**THE COMMONWEALTH OF MASSACHUSETTS
PENSION RESERVES INVESTMENT TRUST'S RESPONSE TO
DAVID WAGNER'S MOTION TO STRIKE IMPROPER NEW ARGUMENTS
<u>IN REPLY BRIEF, OR, IN THE ALTERNATIVE, FOR LEAVE TO FILE SURREPLY</u>**

The Commonwealth of Massachusetts Pension Reserves Investment Trust ("Massachusetts PRIT" or "PRIT"), a lead plaintiff movant in the above-captioned actions filed against Massey Energy Company ("Massey"),[1] respectfully submits this response to David Wagner's Motion to Strike Improper New Arguments in Reply Brief,[2] or, in the Alternative, for Leave to File Surreply (the "Motion to Strike" or, alternatively, "Surreply Request" ).  *See* Dkt. Nos. 41-42.[3]  For the reasons set forth below, Massachusetts PRIT:

- Opposes the Motion to Strike in its entirety;

- Opposes the Surreply Request as it relates to Section II.A of PRIT's Reply ("Section II.A") and Section II.B of PRIT's Reply ("Section II.B");  and

- Stipulates to the Surreply Request as it relates to Section II.C of PRIT's Reply ("Section II.C") only.

## PROCEDURAL POSTURE

On June 28, 2010, four motions were timely filed seeking lead plaintiff appointment in the Action by: (1) Massachusetts PRIT; (2) the MEE Investor Group; (3) David Wagner; and (4) Wayne County Employees' Retirement System ("Wayne County").  Based upon the financial interests enumerated in the four movants' motions, it became evident that Massachusetts PRIT — with approximate losses of $4.9 million under the first-in-first-out loss methodology, and $3.8 million under the last-in-first-out loss methodology — had the largest financial interest in the Action by millions of dollars.  The MEE Investor Group was in second place (trading losses of

---

[1] Two related actions were filed in this Court on behalf of purchasers of Massey securities:  (1) *Macomb County Employees' Retirement System v. Massey Energy Co.*, No. 5:10-cv-689 (filed Apr. 29, 2010) (the "Macomb Action"); and (2) *Firefighters' Retirement System of Louisiana v. Massey Energy Co.*, No. 5:10-cv-776 (filed May 28, 2010) (the "Louisiana Action") (collectively, the Macomb Action and Louisiana Action are referred to herein as the "Action").  The Macomb Action alleges a class period of October 28, 2009 through April 21, 2010.  The Louisiana Action alleges a class period of February 1, 2008 through May 16, 2010 (the "Long Class Period").

[2] All references to "Opening," "Opposition," or "Reply" are to the respective movants' opening, opposition, and reply briefs.

[3] Unless otherwise noted, "Dkt. No." refers to the Macomb Action.

$1,041,481).  ***Mr. Wagner was in third place (trading losses of $166,315)***.  Wayne County was in fourth place (trading losses of $55,519).

The MEE Investor Group and Wayne County both recognized these facts in responses acknowledging that Massachusetts PRIT has the largest financial interest in the Action and supporting Massachusetts PRIT's appointment.  *See* Dkt. Nos. 29-30.  On July 15, 2010, Mr. Wagner, alone, filed an opposition to Massachusetts PRIT's lead plaintiff motion.  In his Opposition, for the ***first time*** on record, Mr. Wagner deviated from his initial position that the Long Class Period is legitimate and should be used to calculate the movants' financial interests.[4] He launched a speculative attack on the Long Class Period and the impetus for it.  He raised unfounded defenses to a proposed class period that seeks to protect damaged investors.[5]  Mr. Wagner had never before proffered these positions inimical to the interests of the Class — which consequently render him inadequate to protect the interests of the *entire* putative Class he seeks to lead.

In his Reply, filed July 26, 2010, Wagner anticipated the inevitable, i.e., that Massachusetts PRIT would rightly respond to his newfound arguments because this was its first chance to do so.  *See* Wagner's Reply at 4 n.2 (preemptively requesting leave to file a surreply).

The next day, Mr. Wagner moved to strike Sections II.A, II.B, and II.C, or in the alternative, file a surreply.

---

[4] Mr. Wagner's opening motion: (1) defines the "Class Period" using the Long Class Period; (2) employs the Long Class Period throughout the "Statement of Facts"; and (3) uses the Long Class Period to calculate his financial interest.  Then, in an about-face, Mr. Wagner suggested for the first time in his Opposition that the Long Class Period was "manufactured" and implausible.  *See* PRIT's Reply at 8 n.6 *comparing* Wagner's Opening at 1-2, 7 *with* Wagner's Opposition at 7-8.

[5] Mr. Wagner's Opposition acknowledges that there are damages associated with the Long Class Period.  *See* PRIT's Reply at 12 quoting Wagner's Opposition at 8 n.5 ("[B]ecause Massey stock traded below that mean trading price [of $31] during much **[*but not all*]** of the longer Class Period, the majority **[*but not all*]** of the time period Labaton added to the Class Period will have no recoverable damages.").  Yet, remarkably, Mr. Wagner still questions the propriety of the Long Class Period.

2

**ARGUMENT**

**I.     The Motion to Strike Should be Denied in Its Entirety**

Mr. Wagner's Motion to Strike should be denied because there is no legitimate basis for it.  A motion to strike is "generally viewed with disfavor" because it is "a drastic remedy and because it is often sought by the movant simply as a dilatory tactic."  *Waste Mgmt. Holdings v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (internal quotations marks and citation omitted); *see also Mitchell v. First Cent. Bank, Inc.*, Civ. A. No. 2:08CV6, 2008 WL 4145449, at *1 (N.D. W.Va. Sept. 8, 2008) (motion to strike is an "extreme" remedy that is "highly disfavored by the courts").  "Even if a motion to strike is 'technically appropriate and well-founded,' motions to strike . . . are often denied."  *Id.* at *2 (quoting *Clark v. Milam*, 152 F.R.D. 66, 70 (S.D. W.Va. 1993)).  No such "extreme" or "drastic" remedy is warranted here, and is never appropriate insofar as it would suppress information concerning a lead plaintiff movant's adequacy to serve as a lead plaintiff.

The eleven cases cited in support of the Motion to Strike are clearly distinguishable from the instant situation in effectively every way — e.g., matters involving habeaus corpus petitions and federal sentencing disputes.  ***None*** of the cases cited in support of the Motion to Strike concern the lead plaintiff appointment process or a lead plaintiff's qualifications under the Private Securities Litigation Reform Act of 1995 ("PSLRA").[6]

---

[6]  *See* Motion to Strike at 1-2, citing:
(1)  *Hunt v. Nuth*, 57 F.3d 1327 (4th Cir. 1995) (habeas corpus petition by death row inmate);
(2)  *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494 (D. Md. 2009) (motion for spoliation sanctions by plaintiff following granting of motion to dismiss plaintiff's breach of contract claims);
(3)  *Rasmussen v. Cal. DMV*, No. CV 08-1604, 2008 WL 5274611 (C.D. Cal. Dec. 17, 2008) (motion to dismiss regarding alleged civil rights violations);
(4)  *Glenn K. Jackson, Inc. v. Roe*, 273 F.3d 1192 (9th Cir. 2001) (motion for summary judgment regarding work completed by accountants for plaintiff, a law firm);
(5)  *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507 (9th Cir. 1994) (motion for summary judgment regarding debt collection practices);
(6)  *Nielsen v. U.S. Bureau of Land Mgmt.*, 252 F.R.D. 499 (D. Minn. 2008) (motion *in camera* for review of government documents pertaining to a parcel of land);

3

Mr. Wagner ignores the well-established principle that it is never untimely to address the crucial issue of a lead plaintiff or lead plaintiff movant's adequacy pursuant to the PSLRA.  *See, e.g.*, *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 135 (S.D.N.Y. 2007) ("nothing in the [PSLRA] limits the time at which a court may reconsider a lead plaintiff's ability to adequately represent the interests of the purported class"); *Levitt v. Rogers*, 257 F. App'x 450, 452 (2d Cir. 2007) (replacing lead plaintiff several years into litigation with a movant asserting a smaller financial interest because lead plaintiff no longer had largest financial interest after a majority of its claims were dismissed as time-barred);  *Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*, 231 F.3d 1215, 1218-19 (9th Cir. 2000) ("It is not inconceivable that a lead plaintiff appointed originally might turn out to be an inadequate class representative and that a change might have to be made.  Ordering such a change would be consistent with the district court's ***continuing*** duty to see that a class is adequately represented by counsel.").[7]  Given the importance of a court's

---

(7)  *Kavalir v. Medtronic, Inc.*, No. 07 cv 0835, 2008 WL 4087950 (N.D. Ill. Aug. 27, 2008) (motion to dismiss allegations concerning injuries sustained from an implantable medical device);
(8)  *Puckett v. McPhillips Shinbaum*, Civ. A. No. 2:06cv1148, 2008 WL 906569 (M.D. Ala. Mar. 31, 2008) (motion for summary judgment regarding termination of employment);
(9)  *Affholder, Inc. v. N. Am. Drillers, Inc.*, Civ. A. No. 2:04-0952, 2006 WL 3192537 (S.D. W. Va. Nov. 1, 2006) (motion for summary judgment concerning dispute over water treatment project);
(10)  *Hull v. United States*, 05-CR-0109, 06-CV-1593, 2008 WL 4181946 (D. Md. Sept. 5, 2008) (motion to dismiss concerning challenge to sentence by plaintiff in federal custody); and
(11)  *Jarvis v. Stewart*, No. 1:04CV642, 2005 WL 3088589 (M.D.N.C. Nov. 17, 2005) (motion to dismiss involving terms of disability payment plan).

[7] *See also In re Terayon Commc'ns Sys., Inc.*, No. C 00-1967, 2004 WL 413277, at *7 (N.D. Cal. Feb. 23, 2004) (finding motion to remove lead plaintiffs timely even after class certification, reasoning that "the court has a continuing responsibility to determine whether lead plaintiffs meet the typicality and adequacy prongs of Rule 23 [of the Federal Rules of Civil Procedure] such that the interests of the class are protected."); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 408 (S.D.N.Y. 2004) ("[O]ver the course of this litigation, information may come to light or other reasons develop indicating the need to revisit the lead plaintiff designation . . . . Should circumstances evolve in such a manner, the decision . . . regarding appointment of lead plaintiff and lead counsel may be re-opened."); *In re IMAX Sec. Litig.*, No. 06-cv-6128, 2009 WL 1905033, at *3 (S.D.N.Y. June 29, 2009) (same).  Courts have the right to revisit lead plaintiff appointments ***at any time*** if need arises.  *See, e.g.*, *In re Peregrine Sys., Inc. Sec. Litig.*, 02-cv-870, 2002 WL 32769239, at *16 (S.D. Cal. Oct. 11, 2002) ("court may revisit the issue of whether co-lead plaintiffs are warranted in this case if there is good cause to do so"); *In re Baan Co. Sec. Litig.*, 98-cv-2465, 2002 WL 32307825, at *4 (D.D.C. July 19, 2002) ("If at any point the Court finds that lead plaintiffs or their counsel are not fulfilling the requirements of the PSLRA, it will not hesitate to revisit its rulings on the adequacy of the lead plaintiffs or their counsel."); *Borenstein v. Finova Group, Inc.*, 00-cv-619, 2000 WL 34524743, at *9 (D.Ariz. Aug.

4

continuing duty to protect the interests of the Class, a court can revisit the lead plaintiff appointment criteria whenever the statutory criteria for appointment — financial interest, adequacy, or typicality — come into question.  Mr. Wagner's *post hoc* abandonment of the Long Class Period (and with it, the Class's best interests) destroyed his ability to adequately represent the *entire* putative investor class.  The negative implications of Mr. Wagner's "defendant"-like positions in his Opposition were appropriately raised in PRIT's Reply.  *See* PRIT Reply at 12-13.  *A fortiori*, the Court should consider the serious concerns about Mr. Wagner's adequacy *now*, to the extent it considers his adequacy to serve as a lead plaintiff here at all.[8]  *See Eichenholtz v. VeriFone Holdings, Inc.*, No. C 07-6140, 2008 WL 3925289, at *2 (N.D. Cal. Aug. 22, 2008) ("Certain plaintiffs propose that the class period used here be limited . . . even though that argument is inimical to the interests of the class members those plaintiffs purportedly represent. . . . Indeed, it is unclear why a plaintiff would argue for a shorter class period at this stage, which would have the effect of reducing the class size and limiting the potential amount of damages, unless it was in the best interest of that particular plaintiff only.").

      Accordingly, Mr. Wagner's Motion to Strike should be denied.

---

30, 2000) ("the Court may also reopen the issue of lead Plaintiff"); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 51 (S.D.N.Y. 1998) ("[t]he Court reserves the right to alter this [lead plaintiff] structure at any time and for any reason"); *In re Baan Co. Sec. Litig.*, 271 F. Supp. 2d 3, 6 (D.D.C. 2002) ("The court is also empowered to review these [lead plaintiff] appointments *sua sponte*.").

[8] Pursuant to the PSLRA, after identifying the movant with the largest financial interest, which here is Massachusetts PRIT, the Court must examine whether *that movant* satisfies the adequacy and typicality requirements of Rule 23.  *See In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) ("Once . . . the court identifies the plaintiff with the largest stake in the litigation, further inquiry must focus on that plaintiff alone and be limited to determining whether [it] satisfies the other statutory requirements.").  If it does, the inquiry ends there and the Court should presume Massachusetts to be the "most adequate plaintiff."  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).  Having the largest financial interest by millions of dollars entitles Massachusetts PRIT to the strong presumption that it should be appointed Lead Plaintiff — a presumption that can be rebutted only upon "proof" that Massachusetts PRIT is atypical or inadequate.  No such proof exists here.  As such, the Court need not delve into Mr. Wagner's adequacy because he does not have the largest financial interest in the Action.

5

## II. The Surreply Request Should be Denied in Part and Granted in Part

### A. Sections II.A and II.B Are Not Proper Subjects of a Surreply

Sections II.A and II.B properly addressed the new — and *different* — arguments raised in Mr. Wagner's Opposition. Massachusetts PRIT could not have addressed these arguments sooner. To suggest otherwise makes no sense. It is axiomatic that a reply brief is designed to address arguments raised *for the first time* in opposition papers. Section II.A exclusively concerns the propriety of the Long Class Period. Therein, Massachusetts PRIT defends the facts underpinning the Long Class Period (with citations to the allegations on file in the Louisiana Action) in an effort to protect the putative Class's ability to pursue recoverable damages. Section II.B exclusively addresses the serious issues of "adequacy" raised by Mr. Wagner's adoption of positions inimical to those of the Class, i.e., he seeks to limit a class period rooted in sound facts with which there are recoverable damages associated. *See VeriFone Holdings*, 2008 WL 3925289, at *2. Indeed, Mr. Wagner began acting like a *defendant* in his *Opposition*. PRIT's Reply was the first possible opportunity to address the serious adequacy issues triggered by the arguments first proffered in Mr. Wagner's Opposition.

### B. Massachusetts PRIT Stipulates to the Surreply Request as It Relates to Section II.C

Section II.C addresses a unique defense to which Mr. Wagner is subject, due to the timing of his Massey stock purchases. As discussed in detail in Section II.C, Mr. Wagner is subject to a crippling unique defense because he did not purchase a single Massey share until *after* the explosion on April 5, 2010. *Zero percent* of Mr. Wagner's trading losses were suffered prior to the central curative disclosure event in the Action.[9] As a result, Defendants will almost

---

[9] The explosion on April 5, 2010 is the undisputed central disclosure event in the Action. *See* Macomb Action ¶¶ 2, 4 ("***On April 5, 2010, an explosion at the Upper Big Branch . . . suddenly and tragically revealed the falsity of Massey's repeated representations about the safety of its mining operations***. . . . Massey's common stock plunged by more than 17% in the two days following the accident . . . .") (emphasis added); *see also id.* ¶¶ 54-55 ("The tragic, and avoidable, explosion at the Upper Big Branch mine on April 5, 2010 ***shockingly and suddenly revealed the concealed safety risks to investors***, ***causing***

6

certainly argue that he will not be able to establish the elements of reliance and causation necessary to prove a Section 10(b) cause of action under the Securities Exchange Act of 1934. *See*, *e.g.*, *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 310 (S.D. Ohio 2005) (finding movant subject to unique defense because it purchased approximately 75 percent of its shares after defendants' public disclosures of accounting-related investigations by the U.S. Attorney's Office and the Securities and Exchange Commission); *City Pension Fund for Firefighters & Police Officers in the City of Miami Beach v. Aracruz Cellulose S.A.*, No. 08-cv-23317, slip op. at 11 (S.D. Fla. Aug. 7, 2009) (Dkt. No. 37-2) (rejecting movant whose largest purchase of stock came after defendant disclosed massive currency losses because "[i]t is likely that [movant] will be subject to unique defenses involving . . . purchases after a potential corrective disclosure, affecting issues of reliance and causation."); *see also In re Cable & Wireless, PLC Sec. Litig.*, 217 F.R.D. 372, 377 (E.D. Va. 2003) ("It is undisputed that a movant cannot be selected as lead plaintiff if the unique defenses that it faces will distract that plaintiff from adequately prosecuting the litigation on behalf of the class.").

Massachusetts PRIT highlighted this unique defense for the first time in its Reply. Given the gravity of the implications associated with the auspicious timing of Mr. Wagner's Massey stock purchases, and consistent with the principle that a lead plaintiff's or lead plaintiff applicant's adequacy and typicality can be tested at any time during the course of litigation, *see infra* at 4, Massachusetts PRIT believes that this serious deficiency should not be ignored simply because it was not raised in its Opposition. In fairness to Mr. Wagner, Massachusetts PRIT therefore stipulates to Mr. Wagner's Surreply Request as it relates to Section II.C only, which addresses the timing of Mr. Wagner's purchases and the unique defenses triggered thereby concerning reliance and loss causation. Massachusetts PRIT stipulates to a limited surreply so

---

*the price of Massey stock to decline $9.47 over the next two days, a two-day drop that reduced the value of Massey's common stock by more than 17%*, resulting in an immediate loss of $900 million in market capitalization.") (emphasis added).

7

long as it is narrowly tailored to the legal issues raised in Section II.C.  Indeed, there can be no factual dispute as to the timing of Mr. Wagner's Massey stock purchases.  Any surreply, therefore, should be confined to a response addressing the implications of the case law cited by Massachusetts PRIT in support of its arguments in Section II.C.

Section II.C does not raise issues as to "the adequacy of Wagner's counsel."  Motion to Strike at 3.  *See* PRIT's Reply at 11 ("Of course, neither Massachusetts PRIT nor its counsel endorse such a speculative — and equally absurd — theory about the impetus for the Short Class Period.").  Nor does it "allege new facts not previously alleged in any pleading in this case," relying instead on citations to the Louisiana Action to defend the Long Class Period.  Motion to Strike at 3.[10]

## CONCLUSION

For the above reasons, Massachusetts PRIT respectfully requests that the Court: (1) deny the Motion to Strike; (2) deny the Surreply Request as it relates to Sections II.A and II.B; (3) grant the Surreply Request as it relates to Section II.C only; and (4) grant such other and further relief as the Court may deem just and proper.

Dated: July 29, 2010

Respectfully submitted,

  /s/ Samuel D. Elswick

Samuel D. Elswick, Bar ID # 9271
James A. McKowen
**JAMES F. HUMPHREYS &
    ASSOCIATES L.C.**
United Center, Suite 800
500 Virginia Street, East
Charleston, West Virginia  25301
Telephone: (304) 347-5050
Facsimile: (304) 347-5055

---

[10]  Massachusetts PRIT's stipulation as it relates to Section II.C does not waive any rights to seek leave to file a surreply under Local Rule 7.1(a)(7), should Mr. Wagner's surreply go beyond the scope of Section II.C.

8

selswick@jfhumphreys.com
jmckowen@jfhumphreys.com

*Proposed Liaison Counsel for the Class*

Christopher J. Keller
Eric J. Belfi
Alan I. Ellman
Stefanie J. Sundel
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York  10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
ckeller@labaton.com
ebelfi@labaton.com
aellman@labaton.com
ssundel@labaton.com

*Counsel for the Commonwealth of Massachusetts*
*Pension Reserves Investment Trust and*
*Proposed Lead Counsel for the Class*