# EXHIBIT 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF WEST VIRGINIA

AT BECKLEY

| | |
|---|---|
| MACOMB COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) No. 5:10-cv-00689-ICB ) ) CLASS ACTION |
| Plaintiff, | ) ) The Honorable Irene C. Berger ) |
| vs. | ) ) |
| MASSEY ENERGY COMPANY, et al., | ) ) |
| Defendants. | ) ) ) |
| FIREFIGHTERS' RETIREMENT SYSTEM OF LOUISIANA, Individually and on Behalf of All Others Similarly Situated, | ) No. 5:10-cv-00776-ICB ) ) ) CLASS ACTION ) |
| Plaintiff, | ) The Honorable Irene C. Berger ) |
| vs. | ) ) |
| MASSEY ENERGY COMPANY, et al., | ) ) |
| Defendants. | ) ) ) |

SURREPLY MEMORANDUM IN FURTHER SUPPORT OF DAVID WAGNER'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL

574101_1

## TABLE OF CONTENTS

Page

I. INTRODUCTION AND BACKGROUND ........................................................................1

II. ARGUMENT........................................................................................................................1

    A. Under the Clear Weight of Authority, Wagner's Purchases After Partial Disclosures Actually Support His Typicality ............................................................1

    B. The Court Should Not Consider the "Disclosure" PRIM Attempts to Allege for the First Time in Its Reply ..........................................................................5

    C. PRIM's Position Considering *Dura* at the Lead Plaintiff Stage Is Not Supported by Citing to Arguments Made by Wagner's *Counsel* in A Completely Different Case ..........................................................................................8

    D. PRIM's Improper and Illogical "*Dura* Loss Calculation" Should Not Be Considered .................................................................................................................9

    E. Prim's Reply Misconstrues Wagner's Arguments About the Class Period...........10

III. CONCLUSION................................................................................................................12

# TABLE OF AUTHORITIES

Page

**CASES**

*Arduini/Messina P'ship v. Nat'l Med. Fin. Servs. Corp.*,
   74 F. Supp. 2d 352 (S.D.N.Y. 1999) ............................................................................................7

*Baughman v. Pall Corp.*,
   250 F.R.D. 121 (E.D.N.Y. 2008) ................................................................................................12

*Dietrich v. Bauer*,
   192 F.R.D. 119 (S.D.N.Y. 2000) ..............................................................................................2, 3

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005) ............................................................................................................passim

*Durgin v. Tousa, Inc.*,
   No. 06-61844-CIV-MARRA,
   2008 U.S. Dist. LEXIS 76315 (S.D. Fla. July 15, 2008) ............................................................11

*Feder v. Elec. Data Sys. Corp.*,
   429 F.3d 125 (5th Cir. 2005) ........................................................................................................2

*Glaser v. Enzo Biochem, Inc.*,
   464 F.3d 474 (4th Cir. 2006) ....................................................................................................6, 7

*In re Arakis Energy Corp. Sec. Litig.*,
   No. 95-CV-3431 (ARR),
   1999 U.S. Dist. LEXIS 22246 (E.D.N.Y. Apr. 30, 1999) .............................................................3

*In re BearingPoint, Inc., Sec. Litig.*,
   232 F.R.D. 534 (E.D. Va. 2006) ...................................................................................................2

*In re Comverse Tech., Inc. Sec. Litig.*,
   543 F. Supp. 2d 134 (E.D.N.Y. 2008) ......................................................................................2, 7

*In re Comverse Tech., Inc. Sec. Litig.*,
   No. 06-CV-1825 (NGG) (RER),
   2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007) ......................................................passim

*In re Connetics Corp. Sec. Litig.*,
   257 F.R.D. 572 (N.D. Cal. 2009) ..............................................................................................1, 4

*In re Emulex Corp.*,
   210 F.R.D. 717 (C.D. Cal. 2002) ..................................................................................................2

Page

*In re Firstplus Fin. Group, Inc., Sec. Litig.*,
  No. 3:98-CV-2551-M,
  2002 U.S. Dist. LEXIS 20446 (N.D. Tex. Oct, 23, 2002) ......................................................... 3

*In re Loewen Group Sec. Litig.*,
  233 F.R.D. 154 (E.D. Pa. 2005) ............................................................................................... 4

*In re Novatel Wireless Sec. Litig.*,
  No. 08-CV-1689 H (RBB),
  2010 U.S. Dist. LEXIS 49543 (S.D. Cal. May 12, 2010) .................................................... 2, 4

*In re Providian Fin. Corp. Sec. Litig.*,
  No. C 01-03952 CRB,
  2004 U.S. Dist. LEXIS 31107 (N.D. Cal. Jan. 15, 2004) ......................................................... 2

*In re Tronox, Inc.*,
  262 F.R.D. 338 (S.D.N.Y. 2009) .......................................................................................... 3, 4

*Kops v. NVE Corp.*, No.
  06-574, 2006 U.S. Dist. LEXIS 49713 (D. Minn. July 17, 2006) ............................................ 6

*Lawrence v. Philip Morris Cos., Inc.*,
  No. 94-CV-1494 JG,
  1999 WL 51845 (E.D.N.Y. Jan. 9, 1999) ................................................................................ 3

*Lehocky v. Tidel Techs., Inc.*,
  220 F.R.D. 491 (S.D. Tex. 2004) ............................................................................................. 3

*Ruland v. Infosonics Corp.*,
  No. 06cv1231 BTM(WMc),
  2006 U.S. Dist. LEXIS 79144 (S.D. Cal. Oct. 23, 2006) ......................................................... 8

*Stackhouse v. Toyota Motor Corp.*,
  10-cv-922 (C.D. Cal.) ........................................................................................................ 8, 9

*Wieland v. Stone Energy Corp.*,
  No. 05-2088,
  2007 U.S. Dist. LEXIS 76636 (W.D. La. Aug. 17, 2007) ........................................................ 3

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §78u-4(a)(3)(B)(iii)(II) .......................................................................................................... 11
  §78j(b) ...................................................................................................................................... 5

- iv -

**Page**

California Rules of Civil Procedure
    Rule 23 ................................................................................................................................12
    Rule 23(a) ............................................................................................................................2

I.      INTRODUCTION AND BACKGROUND

Lead plaintiff movant David Wagner ("Wagner") respectfully submits this surreply memorandum in response to the arguments raised for the first time in the Reply Memorandum of Law in Further Support of the Motion of the Commonwealth of Massachusetts Pension Reserves Investment Trust for Consolidation, Appointment as Lead Plaintiff, and Approval of Selection of Lead Counsel ("PRIM Reply" or "Reply"), Docket #36.

Instead of addressing the serious defects in the Commonwealth of Massachusetts Pension Reserves Investment Trust's ("PRIM") motion which were raised by Wagner in his opposition brief, PRIM filed a reply memorandum which attempts to deflect attention from those defects by: (1) raising new attacks on Wagner and his counsel; (2) injecting new allegations into the case which have never been alleged in any pleading in this case; and (3) misconstruing Wagner's arguments concerning the length of the Class Period. These new arguments are both procedurally improper and factually inaccurate.

II.     ARGUMENT

    A.      **Under the Clear Weight of Authority, Wagner's Purchases After Partial Disclosures Actually Support His Typicality**

Although PRIM did not timely raise *any* issues concerning Wagner's adequacy or typicality in its July 15, 2010, opposition brief, in its Reply, PRIM argues that Wagner is atypical because he started purchasing Massey stock on April 6, 2010, one day after the explosion in the Upper Big Branch mine. While citing a handful of cases to support its position, PRIM ignores that "the *weight of authority* appears to favor the position that the purchase of stock after a partial disclosure is not a per-se bar to satisfying the typicality requirement." *In re Connetics*

- 1 -

*Corp. Sec. Litig.*, 257 F.R.D. 572, 577 (N.D. Cal. 2009).[1] Dozens of courts across the country, including the Fifth Circuit Court of Appeals have expressly "reject[ed] the argument that a proposed class representative in a fraud-on-the-market securities suit is as a matter of law categorically precluded from meeting the requirements of Rule 23(a) simply because of a post-disclosure purchase of the defendant company's stock." *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 138 (5th Cir. 2005); *In re BearingPoint, Inc., Sec. Litig.*, 232 F.R.D. 534, 540 (E.D. Va. 2006) (holding plaintiff who purchased after an adverse disclosure was not atypical and certified plaintiff as class representative at the more rigorous class certification stage); *In re Novatel Wireless Sec. Litig.*, No. 08-CV-1689 H (RBB), 2010 U.S. Dist. LEXIS 49543, at *20 (S.D. Cal. May 12, 2010) ("post-disclosure purchases do not rebut the presumption of reliance on the market price with regard to the initial purchase of stock, and thus Plaintiffs are not per se atypical even though they purchased stock after some of the alleged disclosures"); *In re Providian Fin. Corp. Sec. Litig.*, No. C 01-03952 CRB, 2004 U.S. Dist. LEXIS 31107, at *14-*17 (N.D. Cal. Jan. 15, 2004) (holding that lead plaintiff that bought stock after the adverse disclosures had satisfied the typicality requirement); *In re Emulex Corp.*, 210 F.R.D. 717, 719 (C.D. Cal. 2002) (plaintiffs' purchases of stock ***even after the end of the class period*** when the fraud was fully disclosed did not render the plaintiffs atypical); *see also In re Comverse Tech., Inc. Sec. Litig.*, 543 F. Supp. 2d 134, 145, 150-51 (E.D.N.Y. 2008) (rejecting defendants' argument that purchases after alleged partial disclosures created a defense where the partial disclosures were too "weak" to "counter-balance effectively" the company's previous false and misleading statements"); *Dietrich v. Bauer*, 192 F.R.D. 119, 125 n.1 (S.D.N.Y. 2000) (finding proposed class representative satisfied typicality despite purchasing stock after partial curative

---

[1] Unless otherwise noted, all emphasis is added and citations are omitted.

disclosures where the disclosures did not concede the existence of the fraudulent schemes at issue in the litigation).[2] Thus, in addition to being untimely because it was raised for the first time in its Reply, PRIM's argument has repeatedly been rejected on the merits by the vast majority of courts around the country which have considered the argument.

The fact that Wagner purchased Massey stock after the mine explosion does not render his claims atypical. Recently, in *In re Tronox, Inc.*, 262 F.R.D. 338, 345-46 (S.D.N.Y. 2009), a lead plaintiff movant (Alaska) argued, like PRIM does here, that an opposing movant was subject to a unique defense because it did not begin purchasing its stock in the subject company until ***more than one month after the first partial disclosure*** in the case, "and, in some instances, bought large amounts of shares within days of a negative announcement or ratings downgrade." *Id*. Distinguishing the cases cited by Alaska -- including some of the same cases relied on by PRIM here -- the court noted that "partial disclosures that Alaska emphasizes prior to LaGrange's purchases were merely ***partial*** corrective disclosures." *Id*. (emphasis in original).

---

[2] *See also In re Arakis Energy Corp. Sec. Litig*., No. 95-CV-3431 (ARR), 1999 U.S. Dist. LEXIS 22246, at *21 (E.D.N.Y. Apr. 30, 1999) (approving proposed class representative despite having purchased options in the last two days of the class period and after the issuer had disseminated to the public certain curative disclosures, noting that "'a difference in the amount of damage, date, size, or manner of purchase, the type of purchaser, and even the specific document influencing the purchase will not render the claim atypical in most securities actions'"); *Lawrence v. Philip Morris Cos., Inc.*, No. 94-CV-1494 JG, 1999 WL 51845, at *5-*6 (E.D.N.Y. Jan. 9, 1999) (finding representative plaintiff's claim was not atypical even though plaintiff purchased securities after partial disclosure and drop in stock price); *In re Firstplus Fin. Group, Inc., Sec. Litig*., No. 3:98-CV-2551-M, 2002 U.S. Dist. LEXIS 20446, at *16-*17 (N.D. Tex. Oct, 23, 2002) (indicating vast majority of courts hold that a plaintiff's purchase of stock after the close of a class period or after disclosure of materially adverse information does not raise a unique defense to destroy typicality); *Dietrich*, 192 F.R.D. at 125 (finding proposed class representative typical despite purchase after wide dissemination of negative publicity); *Lehocky v. Tidel Techs., Inc*., 220 F.R.D. 491, 502 (S.D. Tex. 2004) ("purchases after partial curative disclosures do not necessarily render a proposed class representative atypical"); *Wieland v. Stone Energy Corp.,* No. 05-2088, 2007 U.S. Dist. LEXIS 76636, at *28-*35 (W.D. La. Aug. 17, 2007) (finding plaintiffs who purchased after the first disclosure had adequately stated a claim for relief).

"They neither make mention of fraud or government investigations; nor do they sufficiently correct [Massey's] prior false and misleading statements or make [Wagner], or any other class member, actually aware of the fraud." *Id. See also In re Loewen Group Sec. Litig.*, 233 F.R.D. 154, 163 (E.D. Pa. 2005) (rejecting the argument that class representatives who purchased ***all of their shares after a partial curative disclosure*** were subject to unique defenses). Similarly, here, because the truth about defendants' fraud was not fully disclosed on April 5, 2010 with the mine explosion, but rather on May 16, 2010, at the end of the Class Period, Wagner's purchases after April 5, 2010, do not render him atypical or subject to any unique defense.

Even if Wagner's purchases after the mine explosion were a "defense" to his claims (they are not), PRIM has "not offered evidence to prove this is truly a ***unique*** defense applicable only to [Wagner], because other members of the proposed class could also have bought stock after the alleged disclosures." *Novatel*, 2010 U.S. Dist. LEXIS 49543, at *21 (decided at the more rigorous class certification stage). *See also Connetics*, 257 F.R.D. at 576-77. In fact, evidence in the record establishes that many of the lead plaintiff movants in this case purchased stock after the mine explosion on April 5, 2010*, including PRIM, who purchased stock two weeks prior to the end of the Class Period on April 30, 2010*.[3] Thus, the "defense" PRIM raises, if it is one, is clearly not "unique" to Wagner. ***PRIM itself would be subject to very same "defense" if appointed***. Thus, rather than being unique, it is a defense that would have to be dealt with ***no matter who is appointed lead plaintiff***. *See id*. Consequently, rather than rebutting the presumption of most adequate plaintiff which lies in favor of Wagner, PRIM's argument actually demonstrates that Wagner is ***typical*** of other members of the class. *See Connetics*, 257 F.R.D. at

---

[3] Significantly, as demonstrated in Wagner's Opposition to Competing Motions for Appointment as Lead Plaintiff ("Wagner Opp." or "Opposition") (Docket #32), this, in fact, is the ***only*** trade for which PRIM can demonstrate both loss causation and actual loss. *Id.* at 7.

- 4 -

574101_1

577 (rejecting defendants' argument that purchases after alleged partial disclosures created a defense where "other class members may also have purchased [the company's] stock after partial adverse disclosures by the company).

### B. The Court Should Not Consider the "Disclosure" PRIM Attempts to Allege for the First Time in Its Reply

As noted in Wagner's Opposition, defendants will assuredly argue that PRIM's losses are not *Dura*-compliant because its losses were due to sales of Massey stock ***prior*** to the first partial disclosure (as alleged in both complaints) on April 5, 2010. Wagner Opp. at 4-7. In fact, "[t]he exclusion of in-and-out shares follows directly from the underlying holding in *Dura*." *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 U.S. Dist. LEXIS 14878, at *20 (E.D.N.Y. Mar. 2, 2007). In an apparent effort to rehabilitate some of its losses, PRIM raises – ***for the first time in its Reply*** – a brand new "partial disclosure" that PRIM alleges occurred in October 2009. PRIM Reply at 17.[4] Although understandable, PRIM's belated attempt to locate and allege a disclosure dated prior to some of its stock sales is unavailing. PRIM implores the Court to ignore that the Fourth Circuit has found that "[i]t is only after the fraudulent conduct is disclosed to the investing public, followed by a drop in the value of the

---

[4] PRIM's argument that Wagner somehow "abandoned" LIFO or FIFO calculations by citing the *Dura* analysis in his opposition misses the point. *Dura* is not inconsistent with either LIFO or FIFO. Rather, under the Supreme Court's pronouncement in *Dura*, losses sustained prior to any alleged disclosure are not recoverable under §10(b) and are not properly included in a movant's financial interest. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341 (2005); *Comverse*, 2007 U.S. Dist. LEXIS 14878, at *16 n.6 (What is "clear [is] that courts cannot include non-recoverable losses in a calculation of each litigant's financial interest"). ***After*** these losses are excluded, a movant's actionable loss may be determined by LIFO or FIFO, whichever the Court determines is appropriate. Wagner even submitted, with his Opposition, his own LIFO and FIFO losses under the shorter Class Period (his losses in the longer class period are the same under LIFO or FIFO). There was no need for Wagner to apply *Dura* to his own loss calculation in his opening motion because, unlike the case with ***all*** of PRIM's losses, none of Wagner's losses are excluded under *Dura*. Thus, PRIM's argument that Wagner has somehow abandoned a calculation used previously is incorrect.

- 5 -

stock, that the hypothetical investor has suffered a 'loss' that is actionable after the Supreme Court's decision in *Dura*. In other words, so long as the fraud is undisclosed, normal fluctuations in price attendant to any market may have a direct effect on the value of the investor's portfolio, but cannot be said to be a 'loss' that is actionable under the federal securities laws." *Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 479 (4th Cir. 2006).

It is hardly coincidental that the newly proffered "partial disclosure" was not pled in ***either*** of the complaints, ***including the May 28, 2010 complaint filed by PRIM's counsel***. Significantly, ***PRIM itself did not even raise this disclosure in its opening motion***. Memorandum of Law in Support of Motion of Commonwealth of Massachusetts Pension Reserves Trust for Consolidation of Related Cases, Appointment as lead Plaintiff and Approval of Selection of Counsel, Docket #14 at 2-4. Thus, while it is possible that such a disclosure ***might be*** pled later in the case, courts have understandably refused to consider information like this that was not pled in a complaint or raised ***prior*** to the time of filing lead plaintiff motions.

For example, in *Kops v. NVE Corp.,* No. 06-574, 2006 U.S. Dist. LEXIS 49713 (D. Minn. July 17, 2006), a movant who had no *Dura*-compliant losses attempted to assert late in the lead plaintiff process that a news article which caused the stock to drop prior to its stock sales should be considered a partial disclosure. *Id*. at *14. The court refused to consider the news article as a partial disclosure at the lead plaintiff stage because the information was not pled in any of the complaints. *Id*. at *15. Just as PRIM does here, the movant asked the court to take its word for it that the stock declined as a result of the news article.[5] *Id*. Creative lawyering cannot alter the

---

[5] Notably, the news article PRIM now relies upon as a partial disclosure was actually first published on the *Associated Press Newswire* after the close of business on October **7**, 2009, at 10:36 p.m. GMT (or 6:36 p.m. EDT). Ex. A to the Declaration of John F. Dascoli in Support of Surreply Memorandum in Further Support of David Wagner's Motion for Appointment as Lead Plaintiff ("Dascoli Surreply Decl."), submitted concurrently herewith as Exhibit 2. On October 7, 2009,

facts.[6]  Thus, after intensive investigation and analysis, other disclosures may provide *Dura*-compliant losses, the Court should not rest its important lead plaintiff decision on the information PRIM asserts for the ***first time*** in the case in its Reply, where it ***desperately*** seeks a partial disclosure in order to rehabilitate its losses under *Dura* and *Glaser*.

Similarly, in *Arduini/Messina P'ship v. Nat'l Med. Fin. Servs. Corp.*, 74 F. Supp. 2d 352, 361-62 (S.D.N.Y. 1999), the plaintiffs, who had sold all of their shares prior to any disclosure, attempted to assert an event that triggered a stock loss as a partial disclosure in order to argue around their *Dura* loss causation problem.  *Id*. at 362 & n.8.  The court refused to consider the event as it had not been pled in the complaint.  *Id*.

Likewise, in *Comverse*, a lead plaintiff movant faced with loss causation issues under *Dura* argued that it should not be penalized at the lead plaintiff stage for failing to enumerate every corrective disclosure, and additional disclosures could be alleged later which would demonstrate loss causation, just like PRIM argues here.  While the court sympathized with the movant's position, it ultimately held "by the same token it would be unfair to speculate that [the lead plaintiff movant] will ultimately be able to demonstrate loss causation for its in-and-out transactions, despite its patent failure to allege facts in support thereof."  2007 U.S. Dist. LEXIS 14878, at *18-*19.  The court noted that "such a practice would encourage plaintiffs competing to lead a PSLRA litigation to overstate their losses at the outset of a lawsuit, in hope of a court's declining to look beyond those conclusory allegations until after discovery, when it might be too

---

Massey stock closed at $30.57.  On October 8, 2009, Massey stock closed at $31.39.  Thus, if anything, the price of Massey stock ***increased*** by $0.82 in response to PRIM's recently discovered "partial disclosure."

[6]  On October 9, 2009, Massey stock closed at $31.39.  By October 14, 2009, Massey stock was trading at $32.59.  *See*  Declaration of John F. Dascoli in Support of David Wagner's Opposition to Competing Motions for Appointment as Lead Plaintiff ("Dascoli Opp. Decl.") (Docket #33), Ex. 6.

- 7 -

574101_1

late to appoint a more deserving lead plaintiff." *Id*.  Thus, in order to discourage such a practice, "***[i]n selecting a plaintiff to lead this litigation at this stage of the proceedings, the court can and must only consider the pleadings before it***."  *Id*.  See also *Ruland v. Infosonics Corp.*, No. 06cv1231 BTM(WMc), 2006 U.S. Dist. LEXIS 79144, at *15 (S.D. Cal. Oct. 23, 2006) (where no partial disclosures were alleged, finding "it would be too complicated at this stage of the litigation to make findings of fact regarding any potential partial disclosures and the effect, if any, these disclosures had on the price of the stock").  The October 2009 news article was not pled in any of the complaints.  Nor was it raised by PRIM in its statement of facts in support of its motion.  Rather, it was raised for the first time in PRIM's Reply.  As such, the Court cannot properly consider it for purposes of appointing a lead plaintiff.

    **C.**    **PRIM's Position Considering *Dura* at the Lead Plaintiff Stage Is Not Supported by Citing to Arguments Made by Wagner's *Counsel* in A Completely Different Case**

PRIM also criticizes Wagner's counsel for arguing that the Court should consider controlling Supreme Court precedent at the lead plaintiff stage, citing arguments Wagner's *counsel* made in a completely different case.  PRIM Reply at 18 n.15.  Yet, in that very case, ***both PRIM and its counsel here argued in favor of the use of Dura to limit a movant's financial interest after the initial motions were filed***.  Dascoli Surreply Decl., Ex.B.  In that case, *Stackhouse v. Toyota Motor Corp.*, 10-cv-922 (C.D. Cal.), **PRIM argued**, "courts routinely calculate losses by using a *Dura* loss analysis, *i.e.*, the court will exclude losses from stock sold prior to the first corrective disclosure, and then apply the preferred LIFO methodology to determine a movant's actual losses." *Id.* at 4.  PRIM further noted that "[l]oss causation issues under *Dura* are relevant on lead plaintiff motions." *Id*. at 15.  PRIM's counsel here, Labaton Sucharow LLP, filed a separate brief in which it stated that "The Supreme Court's Decision in *Dura* Confirmed the Focus on Potential Recovery in Determining Largest Financial Interest."

Dascoli Surreply Decl., Ex. C at 7.  Labaton also recognized that in determining which movant should be appointed lead plaintiff, a district court should focus only on what was currently pled, not on facts that *might* later be pled stating "[l]osses on [in-and-out] transactions may, or may not, ultimately be compensable to some extent based upon the facts developed during the litigation, but at this point, *it makes more sense to appoint as lead plaintiff the applicant whose losses are far more likely to have been caused by disclosure of the truth*." *Id.* at 11.

### D.   PRIM's Improper and Illogical "*Dura* Loss Calculation" Should Not Be Considered

PRIM also presents, for the first time on reply, a very curious *Dura* loss calculation completely contrary to logic and the analysis PRIM urged another district court to adopt several weeks ago in the *Toyota* case.  *See* Dascoli Surreply Decl., Ex. B at 16 (PRIM arguing that the court must *first* exclude in and out losses under *Dura* and *only then* apply LIFO to the remaining shares).  PRIM argues now in this case that the Court should apply LIFO first, *prior to excluding in-and- out losses under Dura* so that it can claim a larger financial interest than Wagner under *Dura*.  PRIM Reply at 18 n.16; Reply Declaration of Christopher J. Keller in Further Support of the Motion of the Commonwealth of Massachusetts Pension Reserves Investment Trust for Consolidation, Appointment as Lead Plaintiff, and Approval of Selection of Counsel, Ex. H, Docket #37.  By arguing for the application of LIFO before excluding in-and-out transactions, PRIM matches the last shares it purchased with the first shares it sold, enabling it to claim that at the end of the Class Period, it somehow *still held* the highest-priced shares which were purchased at the very beginning of the Class Period.  For example, PRIM's erroneous calculation considers shares purchased in February 2008 as still *retained* at the end of the Class Period while PRIM sold *thousands of shares* shortly after purchasing those highly-priced shares.  In addition, PRIM's calculation asks the Court to consider shares purchased in the middle of 2009 to have been sold *a year prior to the date they were purchased*.  *Id.*  Absurd.  *See Comverse*, 2007 U.S.

- 9 -

Dist. LEXIS 14878, at *26 ("It appears that [the movant's] new calculation *inexplicably* matches *sales* of shares from 2001 *with purchases of shares that occurred years later in 2006*," and rejecting the calculation.).

This calculation is completely contrary to both reality and a proper *Dura* analysis in which the Court must *first* exclude *all* in-and-out losses suffered prior to the disclosure. *See id*. In reality, the shares PRIM purchased in February 2008 were *actually* sold prior to the first alleged partial disclosure, *not retained* at the end of the Class Period. Thus, these and all other losses from shares sold prior to April 5, 2010, are in-and-out losses which are not properly considered in PRIM's financial interest, under either LIFO *or* FIFO. *See* Wagner Opp. at 7. Under a *proper Dura* analysis -- where shares both purchased and sold prior to the alleged disclosures are excluded *prior* to calculating the financial interest -- PRIM has a *gain*. Dascoli Opp. Decl., Ex. 6.

Finally, although PRIM goes to great lengths to avoid a *Dura* analysis at the lead plaintiff stage, its motion should be denied regardless of whether the Court decides to apply *Dura* now or at future stages of the case. Otherwise if PRIM is appointed, *Dura* will hang – like the proverbial sword of Damocles -- over PRIM (and therefore the class) throughout the litigation. PRIM's motion should be denied.

### E. Prim's Reply Misconstrues Wagner's Arguments About the Class Period

PRIM misconstrues Wagner's argument regarding the length of the Class Period. PRIM states that "Wagner has abandoned the Long Class Period in favor of a self-serving strategy to win the role of lead plaintiff." PRIM Reply at 2. Not true. Wagner has not – and will not -- abandon the longer class period. While Wagner does point out questions relating to the

extension of the Class Period by PRIM's counsel Wagner *never* argues that the longer class period should be abandoned.[7]  Rather, Wagner merely pointed out the arguments *defendants* will exploit to attempt to limit the case to the originally-alleged shorter class period if PRIM were to be appointed lead plaintiff, recognizing that PRIM has no damages in the shorter Class Period. Wagner Opp. at 7-9.

Curiously, PRIM appears frustrated that Wagner did exactly what the PSLRA was designed to do.  15 U.S.C. §78u-4(a)(3)(B)(iii)(II).  While it may seem incongruous to have plaintiffs advising the Court of arguments defendants will later make, the PSLRA specifically provides that class members are to demonstrate at the lead plaintiff stage why the class should not be saddled with a lead plaintiff subject to unique defenses.  *Id.*  A lead plaintiff movant who is serious about protecting the class will make sure that risks faced by other movants are *timely* raised so the class is not left with inadequate representation.  This is precisely what Wagner has done.

Wagner has advised the Court of a unique defense that defendants would certainly exploit against PRIM if it were appointed the sole lead plaintiff here.  Thus, PRIM's hyperbolic attacks on Wagner and his counsel, claiming that they have made arguments inimical to part of the class, are without merit.  Wagner's arguments concerning the class period are not "untoward" and do not render Wagner unable to represent the *entire* class.  *See Durgin v. Tousa, Inc.*, No. 06-61844-CIV-MARRA, 2008 U.S. Dist. LEXIS 76315, at *6 (S.D. Fla. July 15, 2008) ("Simply put, there is nothing untoward about" a movant demonstrating a lack of loss causation for a certain portion

---

[7]  While PRIM cites to numerous cases in which Wagner's counsel has extended a class period prior to lead plaintiff motions, it does not, and cannot cite authority where Wagner's counsel then promptly turned around in those cases and filed a lead plaintiff motion on behalf of a movant who would have had *no losses* in the original shorter class period as is being done here.  *See* PRIM Reply at 13 n.11.  For this reason, the "pot shots" at Wagner's counsel miss the mark.

- 11 -

of the class' losses and does not "reflect[] a betrayal of certain class members."); *Baughman v. Pall Corp.*, 250 F.R.D. 121, 126-27 (E.D.N.Y. 2008) (noting that a lead plaintiff movant who makes arguments against an opposing movant which simply point out unique defense arguments defendants will likely raise is not abandoning the class, especially where the movant has ***not*** suggested that it is ***not*** willing to pursue the claims of all plaintiffs). Quite the opposite -- Wagner has never stated that he is unwilling or unable to represent the interests of all class members. What he has done is attempt to ensure that the class is adequately protected by pointing out defenses defendants will surely exploit against PRIM if it were appointed the representative of this class.

In the end, PRIM does not dispute that it has no losses in the shorter, originally filed class period; and that if it were appointed, defendants would use this fact at every possible turn to disrupt the case and leave the class without representation.[8]

## III. CONCLUSION

Wagner is the only movant who possesses the largest financial interest in the relief sought by the class, and who also satisfies the adequacy and typicality requirements of Rule 23. Consequently, Wagner respectfully requests that the court appoint him lead plaintiff.

DATED: August ___, 2010    JOHN F. DASCOLI, PLLC
    JOHN F. DASCOLI (SBID #6303)


    _____
    JOHN F. DASCOLI

---

[8] It is somewhat telling that it takes PRIM no ***less than seven and one-half pages in its Reply*** in its effort to dispel the significance of the unique defense it faces. This issue would clearly sidetrack PRIM if it were appointed and, more importantly, would threaten the class. The class should not be exposed to such risk.

- 12 -

574101_1

- 13 -

       2442 Kanawha Boulevard, East
       Charleston, WV  25311
       Telephone: 340/720-8684
       304/342-3651 (fax)

       [Proposed] Liaison Counsel

       ROBBINS GELLER RUDMAN & DOWD LLP
       DARREN J. ROBBINS
       TRICIA L. MCCORMICK
       LAURIE L. LARGENT
       655 West Broadway, Suite 1900
       San Diego, CA  92101
       Telephone:  619/231-1058
       619/231-7423 (fax)

       ROBBINS GELLER RUDMAN & DOWD LLP
       DENNIS J. HERMAN
       CHRISTOPHER M. WOOD
       100 Pine Street, Suite 2600
       San Francisco, CA  94111
       Telephone:  415/288-4545
       415/288-4534 (fax)

       [Proposed] Lead Counsel for Plaintiffs